IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-00218-CV-W-GAF |
| | ) |
| JIANAS BROTHERS PACKAGING CO., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Presently before the Court is Defendant Jianas Brothers Packaging Company's ("JBPC") Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, Fed. R. Civ. P. 12(b)(6). (Doc. # 7). Plaintiff The Cincinnati Insurance Co. ("Cincinnati Insurance") opposes. (Doc. # 10). For the reasons set forth below, JBPC's Motion is **GRANTED**.

## DISCUSSION

**I.     FACTS**[1]

Cincinnati Insurance seeks declaratory relief pursuant to 28 U.S.C. § 2201. It asks the Court to interpret the insurance policies it issued to JBPC. More specifically, Cincinnati Insurance seeks to have the Court determine whether the aforementioned insurance policies provide coverage to JBPC for potential liability incurred as a result of JBPC's product recall.[2]

---

[1] Unless otherwise indicated, all facts are taken from Cincinnati Insurance's Complaint for Declaratory Judgment ("Complaint"). (Doc. # 1).

[2] Contrary to Cincinnati Insurance's contentions in its Suggestions in Opposition, the Complaint does not seek a determination by the Court of whether the aforementioned insurance policies impose upon Cincinnati Insurance a present duty to defend JBPC. Therefore, Cincinnati Insurance's duty to defend will not be discussed further.

1

Plainview Milk Products Cooperative ("Plainview") sells instant nonfat dry milk powder. Plainview is believed to have sold its instant nonfat dry milk power to Mainstreet Ingredients, which then sold the product to JBPC. JBPC used the dry milk powder it its Dairy Shake product, which is sold to purchasers such as AmeriQual Group, LLC ("AmeriQual") and SO-PAK-CO, Inc. d/b/a SOPAKCO Packaging ("SO-PAK-CO"). AmeriQual and SO-PAK-CO placed the Dairy Shake product in MRE boxes that were sold to the Defense Supply Center Philadelphia ("DSCP").

On February 19, 2009, a company that had received Plainview's instant nonfat dry milk powder noted a potential for salmonella contamination of a finished product. The Food and Drug Administration and the Minnesota Department of Agriculture conducted an investigation to determine the source and presence of contamination. Extensive testing has never detected any contamination in any of Plainview's milk products or JBPC's Dairy Shake product. Salmonella, however, was detected in an area of Plainview's manufacturing plant.

As a result of the contamination, Plainview elected to recall all of its agglomerated products produced over a two year span, including JBPC's Dairy Shake products sold to AmeriQual, SO-PAK-CO, and others. JBPC's Dairy Shake products were recalled due to a failure to comply with the Federal Food, Drug, and Cosmetic Act and the regulations promulgated thereunder.

The DSCP has asserted that AmeriQual and SO-PAK-CO must reimburse the Government and/or replace any of the products recalled, including the cost to transport and handle the replaced products. In a demand letter, AmeriQual claims JBPC should pay the cost for the rework and replacement of the cases containing the recalled product supplied by JBPC. AmeriQual requested reimbursement in the amount of $686,467. Similarly, SO-PAK-CO also believes JBPC should

reimburse it for costs incurred due to the recall. SO-PAK-CO believes those costs will be in excess of $75,000, exclusive of interest.

No customer or third party has filed suit against JBPC in connection with the product recall. (Affidavit of Steve Jianas ("Aff't of Jianas"), ¶ 9). JBPC has not paid any money to any third party or assumed or acknowledged any loss or liability to third parties as a result of Plainview's recall. *Id.* at ¶ 5).

## II. LEGAL STANDARDS

Federal district courts have been granted only limited jurisdiction by Article III of the United States Constitution. One requirement for the exercise of jurisdiction in a particular lawsuit is that that the lawsuit involve an actual case or controversy. *Jackson v. Kuhn*, 254 F.2d 555, 559 (8th Cir. 1958) ("It is the duty of the federal district court to dismiss an action whenever the court is satisfied that a controversy within its jurisdiction is not involved."). In the context of declaratory judgment actions, the United States Supreme Court has provided a uniform framework for assessing whether an Article III case or controversy exists. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune*, 549 U.S. at 138. The controversy "must be a real and substantial controversy . . . , as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* Accordingly, the Supreme Court has stated that "no controversy exists when a declaratory judgment plaintiff attempts to obtain a premature ruling on potential defenses that would typically be adjudicated in a later actual controversy." *Id.* at 139. The declaratory judgment procedure "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Id.*

3

The "actual controversy" language limits federal court action to "justiciable cases." *Pub. Water Supply Dist. No. 10 v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2008). Ripeness is one traditional requirement of justiciability. *See id.* The ripeness doctrine is meant to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* For a case to be "ripe," a plaintiff must demonstrate: (1) the case is "fit" for judicial decision; and (2) the plaintiff will suffer "significant harm" if abstention occurs. *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000).

## III. ANALYSIS

Here, Cincinnati Insurance requests the Court to interpret the insurance policies it issued to JBPC to determine whether Cincinnati Insurance would have a duty to indemnify JBPC for amounts JBPC might have to pay its customers due to the recall of the Dairy Shake products. However, the facts presented to the Court demonstrate JBPC's potential liability to any customer for damages arising from the recall is highly speculative at this point. While JBPC has received demand letters from two customers, no suit has been filed against JBPC and there is no accurate means to estimate whether JBPC is or will be liable as a result of the recall.

Because JBPC's potential liability resulting from the recall is highly speculative at this point, Cincinnati Insurance's present duty to indemnify JBPC is also highly speculative. Accordingly, the Court finds the case is presently unfit for judicial decision. Further, Cincinnati Insurance has not demonstrated that it will suffer significant harm if the Court abstains from presently hearing the case. If and when JBPC's liability as a result of the recall becomes less speculative and abstract, Cincinnati Insurance will be free to seek a judicial determination of its duty to indemnify. Until then, any determination of Cincinnati Insurance's duty to indemnify will amount to no more than

4

an advisory opinion regarding potential coverage. As stated above, the declaratory judgment procedure "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *MedImmune*, 549 U.S. at 139. Therefore, because the Court finds the present case is not ripe for adjudication and abstention is proper, JBPC's Motion to Dismiss is **GRANTED**.

## CONCLUSION

Cincinnati Insurance's case is not presently ripe for adjudication. Presently, no third party has brought suit against JBPC for claimed damages arising from the Dairy Shake product recall. JBPC has not assumed any liability as a result of the recall, and it is uncertain whether JBPC will ever be found legal liable to customers for damages arising from the recall. Because JBPC's potential liability is speculative, Cincinnati Insurance's duty to indemnify JBPC is also speculative. For these reasons and those set forth above, abstention is proper and JBPC's Motion is **GRANTED**.

                                                  s/ Gary A. Fenner
                                                  Gary A. Fenner, Judge
                                                  United States District Court

DATED: July 7, 2010